UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER R. PAVEY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINE REAGLE, RONNIE NEAL, DAWN BUSS, DONNA CARNEYGEE, BESSIE E LEONARD, JOSHUA R WALLEN, ALICIA CALDANARO, MARK NEWKIRK, LLOYD ARNOLD, NINA HUMMELL, LESLIE GALLAHER, ISAAC RANDOLPH, and KARSON HARTZ,<br><br>Defendants. | CAUSE NO. 3:25-CV-568-PPS-JEM |

OPINION AND ORDER

Christopher R. Pavey, a prisoner without a lawyer, filed a second amended complaint alleging that he was denied access to the courts, denied access to the prison's grievance system, and subjected to retaliation. ECF 18. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Pavey's second amended complaint, like his earlier complaint (ECF 14), is rather repetitive and unduly lengthy, although his core allegations remain unchanged. He is suing thirteen defendants who allegedly conspired to deprive him of his right to access the courts and the prison's grievance system between April 18, 2024, and December 26, 2024. ECF 18 at 1. The defendants include Commissioner Lloyd Arnold, former Commissioner Christine Reagle, Warden Ronnie Neal, Deputy Warden Dawn Buss, Donna Carneygee, Bessie E. Leonard, Joshua R. Wallen, Alicia Caldanaro, Mark Newkirk, Nina Hummel, Elisa Gallagher, Isaac Randolph, and Karson Hartz.

Pavey alleges that he suffered both an actionable loss of property and an actionable physical injury, and his efforts to litigate those claims were hampered by the defendants. The Indiana Tort Claim Act requires production and service of a Notice of Tort Claim within 180 days for property loss and 270 days for personal injury, where the claim is against a state or state agency. *See* Ind. Code § 34-13-3-6; Ind. Code § 34-13-3-7(a) *See also Mayberry v. Schlarf*, No. 3:23-CV-64-JD-JEM, 2023 WL 4763146, at *2 (N.D. Ind. July 25, 2023). Thus, under the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-1 et seq., Pavey needed to serve the Commissioner (by way of the IDOC's Tort Claim Administrator) and Warden Neal (the facility head) with a Notice of Tort Claim by September 26, 2024, for the property loss claim and December 24, 2024, for the physical injury claim.[1] He asserts that he was unable to comply with these deadlines because he was not provided with adequate law library access and because he is

[1] The due dates are not clearly stated in the second amended complaint, but nothing in the second amended complaint suggests that these dates are incorrect.

indigent and his requests for the envelopes he needed to serve Warden Neal were denied.

Pavey is suing each person involved in denying him law library access or envelopes and each person who supervised them, including the Commissioner himself. He is also suing several people involved in processing or responding to his grievances about these matters and their supervisors. Additionally, he alleges that the defendants retaliated against him. He alleges that the defendants conspired, were in cahoots, were complacent, or – at a minimum – consented to deny him law library access, deny him access to the grievance process, and retaliate against him for exercising his rights. But, "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Vill. Of Elk Grove*, 211 F.3d. 416, 423 (7th Cir. 2000). "Section 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). But a supervisor can be held liable if he knew about the conduct, facilitated it, approved it, or turned a blind eye to it. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). With these principles in mind, I will consider the factual allegations in Pavey's second amended complaint.

**A. Pavey's Access to Court Claims**

As I have previously explained (ECF 15 at 2), prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id.* (citations omitted).

There is no claim for a negligent denial of access to the courts; the denial must be intentional. *Id.* at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Because Pavey asserts that two separate legal claims have been impacted by inadequate library access and lack of envelopes, I will examine them separately.

**1. Pavey's Property Loss Claim**

I addressed this claim in my previous screening order as follows:

> On March 27, 2024, Pavey's property was returned to him, and he discovered that some of his property was missing. An inventory of his property took place on November 15, 2023. Another inventory was done on November 28, 2023. The second inventory included only about half of the items included in the November 15, 2023, inventory. Neither inventory used the proper state form for taking an inventory of Pavey's property.
>
> On April 18, 2024, Pavey submitted a form requesting access to the law library. He indicated that he had a deadline of 180 days pursuant to the ITCA, and he asked that he be put on the "deadline list." ECF 14 at 10. Individuals on the list enjoy greater access to the law library than other inmates. This form specifies that the deadline must be verified by a court order or court rule. Pavey believes that the deadline set by the Indiana state legislature should qualify as a court rule. Bessie Leonard, the Supervisor of ISP's law library, would not place Pavey on the deadline list. As a result, from April 18, 2024, through September 26, 2024, he received only one call out pass for access to the library each week, except for two weeks when Leonard was on vacation. *Id.* at 11. While Leonard was away, her supervisor, Donna Carneygee, filled in, and Pavey received five passes during the two weeks Leonard was gone. Leonard was gone on another occasion and Pavey received more than one pass during that period.
>
> Pavey asked Carneygee to intervene to have him added to the deadline list prior to Leonard's vacation. She did not take action to ensure Pavey was added to the list. She also did not admonish Leonard for failing to add Pavey to the list. Pavey discussed this with Dawn Buss (Deputy warden and administrator over law library and Outgoing Legal Mail Services) in person twice and wrote Buss about this issue three times. She too did nothing to ensure Pavey was added to the list.
>
> On September 4, 2024, Pavey sent a "Notice of Tort Claim – Letter of Intent" to Warden Neal and Reagle to show his efforts to comply with the ITCA. The letter explained that he had not been put on the deadline list. He received no response to his notice of intent. He filed grievances about this matter, but he did not receive responses to his grievances either.
>
> On September 25, 2024, a law clerk responsible for the deadline list told Pavey that he was going to add him to the deadline list for thirty days. But the deadline for the Notice of Tort Claim relating to the property loss claim was the next day. Furthermore, despite the law clerk indicating that he would be added to the list, he didn't follow through. Pavey

indicates he was not able to complete his Notice of Tort Claim until October 4, 2024.

The notice was further delayed because Pavey is indigent and relies upon the prison to provide mailing envelopes, but Leonard refused to issue Pavey a legal mail envelope so that the document could be served in a manner that complied with the ITCA, which requires that the notice "must be delivered in person or by registered or certified mail." Ind. Code § 34-13-3-12. Leonard insisted that Pavey could just put the notice in the counselor's box and it would get to Warden Neal. Pavey tried to explain that inmates have had claims rejected for doing this, but Leonard could not be persuaded to issue a legal mail envelope for something to be mailed to Warden Neal, who was accessible through interoffice mail. Due to Leonard's refusal, Pavey could not comply with the notice requirements of the ITCA. His Notice of Tort Claim was denied on October 31, 2024, because he did not comply with the deadline. ECF 14 at 7, 16.

For purposes of this order, the Court will assume that Pavey's property loss claim is sufficiently meritorious. Pavey is entitled to both adequate law library access to enable him to initiate a legal claim and, if he is indigent, envelopes necessary to serve documents. "[I]ndigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds*, 430 U.S. at 824–25; *see also Ripp v. Nickel*, 838 F.Supp.2d 861, 864 (W.D. Wis. 2012). But Pavey had approximately 26 opportunities to go to the law library between March 27, 2024, and September 26, 2024. This does not include the week where Leonard was away and he was able to go to the library two or three times. That is more than adequate law library time to allow a pro se litigant to prepare a Notice of Tort Claim. Pavey argues that because he had a deadline of 180 days to serve the Notice of Tort Claim, he should be permitted to attend the law library and work on his Notice of Tort Claim five days a week. See ECF 14 at 22.

Despite having more than adequate law library access, Pavey was not ready to mail his Notice of Tort Claim by the deadline. The refusal to provide an envelope did not cause Pavey to miss his deadline, because he was not ready to send the notice. The defendants' actions did not hinder Pavey's property claim; his own failure to use his law library time wisely and complete the Notice of Tort Claim in a timely manner hindered his claim. Therefore, I will not allow Pavey to proceed on an access to courts claim stemming from his alleged property loss.

ECF 15 at 3-6.

Pavey's second amended complaint lacks many of the details he included in his earlier complaint. A complaint cannot be amended in piecemeal fashion in federal court. N.D. Ind. L.R. 15-1 requires that he do so by "reproduc[ing] the entire pleading as amended" and prohibits "incorporat[ing] any prior pleading by reference." But, even if I ignore Pavey's failure to recite key factual details in the second amended complaint, it cannot be plausibly inferred that Pavey was deprived of law library access to such an extent that it prevented him from completing his Notice of Tort Claim in a timely manner. Pavey contends that he should have been allowed to access the law library five days a week. The Constitution does not require access of that magnitude. Pavey represented that he was only permitted to go to the law library once a week, with greater access granted when Leonard was on vacation. Based on this assertion, I concluded that he had approximately 26 opportunities to go to the law library before his Indiana Tort Claim Notice was due. In the second amended complaint, Pavey takes issue with this, indicating that his unit was frequently on lockdown so his access was more restricted than I concluded. Pavey doesn't indicate how many times lockdowns interfered with his once-weekly law library access. He also doesn't offer any estimate of how many times he was permitted to go to the law library before his Indiana Tort Claim Notice was due. But it is clear that he was permitted to go *at least* seven times just counting the three weeks when Leonard was gone. In short, Pavey has not alleged facts from which it could plausibly be inferred that his access to the law library was so restricted that he could not have completed his Notice of Tort Claim in a timely manner.

In his second amended complaint, Pavey asserts that he types and works slowly due to his education and lack of legal training. He indicates that he lacks computer literacy and that he has suffered head injuries that slow him down. Pavey isn't required to use a computer to fill out his Notice of Tort Claim forms, so his lack of computer literacy and slow typing speed do not meaningfully increase the amount of law library time that he was constitutionally entitled to receive in order to have access to the courts.[2] What Pavey needed to complete his tort claim form in a timely manner were a blank form or sample notice, instructions on submitting the form, a writing utensil, and paper. This is information that likely could have been obtained in a single visit to the law library; Pavey had many opportunities to visit the law library, even if my earlier estimate that he has twenty-six opportunities was inaccurate. Because a lack of law library access does not plausibly explain his failure to complete the Notice of Tort Claim form for his property loss claim in a timely manner, I cannot permit him to proceed on this claim.

**2. Pavey's Personal Injury Claim**

In my previous screening order, I noted that Pavey had not provided any details about his personal injury claim. Without details, I found that it could not be plausibly

---

[2] In his second amended complaint, Pavey asserts that, on September 25, 2025, he was moved to a cell that lacked a shelf or desk. ECF 18 at 24-25. This made it difficult to organize his legal paperwork, and he contends it forced him to rely upon the law library and computers. A shelf and desk are not necessary to complete a Notice of Tort Claim form, but more importantly, September 25, 2025, is a full year after Pavey's Notice of Tort Claim form related to his alleged property loss was due and nine months after his Notice of Tort Claim form related to his alleged personal injury was due. Therefore, whatever obstacles Pavey's cell assignment caused in September 2025 are not relevant to the claims he is raising in this lawsuit.

inferred that the claim was meritorious. While I found that this was a sufficient basis for me to deny Pavey leave to proceed on an access to court claim stemming from his alleged personal injury, I also found that (as with his property loss claim) inadequate law library access was not the cause of Pavey's inability to access the courts.

Although I made it clear that details must be provided for the court to find that Pavey has plausibly alleged that his claim was meritorious, Pavey made the decision not to provide any additional details. He explains that "the injury is of a Personal Medical issue involving the Private Parts[.]" ECF 18 at 23. I cannot conclude that a claim is plausible if a party does not wish to provide the details of the claim. What's more, Pavey had even more access to the law library before the Notice of Tort Claim was due on his personal injury claim than on his property loss claim. I therefore cannot conclude that he has plausibly alleged that inadequate law library access caused him to be unable to file a timely Notice of Tort Claim related to his personal injury.

**B. Pavey's Claim Relating to Access to the Grievance Process**

In his second amended complaint, Pavey again alleges that the defendants conspired to deny him access to the grievance process, with the purpose of preventing him from holding them accountable for their actions in court. I have already explained to Pavey (ECF 15 at 7-8) that he has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Furthermore, "the alleged mishandling of [plaintiff's] grievances by

persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Pavey will not be prevented from proceeding in court on claims that have not been exhausted where the defendants have made the grievance system unavailable to him. *See Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008), and *abrogated by Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793, 222 L. Ed. 2d 108 (2025). Thus, he may not proceed against any defendant he is suing for their role in processing or responding to (or failing to process or respond to) his grievances.

**C. Retaliation Claim**

Pavey alleges in his second amended complaint that the defendants retaliated against him for exercising his First Amendment rights by filing grievances and this civil rights action. I have already explained the requirements to state a retaliation claim to Pavey. ECF 15 at 8-9. Under the First Amendment, an inmate cannot be punished for engaging in certain kinds of speech. To assert a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Id*. (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Filing a grievance qualifies as "protected activity" for purposes of a First Amendment claim. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Pavey's amended complaint peppers references to retaliation throughout, but he neither delineates a specific grievance or grievances he filed that caused a specific defendant to take a specific retaliatory action, nor explains the link between the protected activity and the retaliatory actions.[3] Any link that could be drawn between Pavey's filing of grievances and subsequent mistreatment is far too tenuous for me to find that he has stated a claim.[4]

To the extent that Pavey is alleging that he has been retaliated against because he filed this lawsuit, his allegations suffer from similar problems. He alleges that Leonard lied about him having a deadline or removed him from the law library deadline list after this court set a deadline for him to file an amended complaint in retaliation for filing this case. ECF 18 at 12, 21. He may be alleging that Carneygee engaged in retaliation when she instructed another staff member to deny Pavey access to the Back Street General Library to sort and organize his exhibits for this case, that Buss discriminated against him when she claimed he had no deadline, or that Neal retaliated against him when he didn't admonish Leonard, Carneygee, or Buss for their allegedly

[3] Pavey expresses his intention to initiate other lawsuits based on some retaliatory acts referenced in his second amended complaint. ECF 18 at 6.

[4] Pavey does reference an instance where Mr. L. Haskell placed a security threat group classification on Pavey because of his religious preference, which caused him to stop attending Native American religious services, but these allegations have nothing to do with this case and Mr. Haskell is not a defendant. Therefore, he cannot proceed on any claim stemming from Mr. Haskell's alleged retaliatory actions in this case.

retaliatory acts. But, when determining whether an action is sufficiently adverse, courts consider "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880-81 (7th Cir. 2020). Removing an inmate from the deadline list and thereby reducing the amount of law library access that an individual has to craft an amended complaint before the court's deadline would not deter a person of ordinary firmness from engaging in future activity protected by the First Amendment. This is especially so where all that was needed to draft an amended complaint was the court's pro se prisoner complaint form, a pen, this court's previous screening order, and perhaps extra paper and a copy of the original complaint. Therefore, to the extent that Pavey intended to allege that he was retaliated against for filing this complaint by the actions of Leonard, Carneygee, Buss, or Neal, I cannot allow him to proceed.

**Conclusion**

Pavey's second amended complaint does not state a claim for which relief can be granted. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). I

pointed out specific shortcomings to Pavey when I screened his earlier complaint, but Pavey's second amended complaint did not adequately address those deficiencies. I expressed doubt that Pavey would be able to state a claim for denial of access to the courts based on either his alleged loss of property or his alleged personal injury, but I nonetheless let him have an opportunity to file a second amended complaint. He has had ample opportunity to plead facts showing that the reason he could not complete his tort claim notices in a timely manner was due to inadequate law library access, and he has not asserted facts from which it could be plausibly inferred that his law library access was so limited that it amounted to a denial of access to the courts. I pointed out specific problems with his retaliation claims too, but his amendment did not adequately address those deficiencies either. Under these circumstances, it would be futile to allow Pavey another opportunity to amend.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

**SO ORDERED.**

ENTERED: October 23, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT